UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JULIE REIDER,

                        Plaintiff,                                          <u>DECISION & ORDER</u>

                                                                            15-CV-6157P
              v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____


# <u>PRELIMINARY STATEMENT</u>

Plaintiff Julie Reider ("Reider") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income Benefits and Disability Insurance Benefits ("SSI/DIB"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge.  (Docket # 14).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 11, 12).  For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

## BACKGROUND

### I.      Procedural Background

Reider filed for SSI/DIB on October 25, 2013, alleging disability beginning on May 3, 2013, due to a right knee injury, depression, anxiety, chest pain, and trouble sleeping. (Tr. 200, 204).[1]  On December 10, 2013, the Social Security Administration denied Reider's claims for benefits, finding that she was not disabled.  (Tr. 83-84).  Reider requested and was granted a hearing before Administrative Law Judge John P. Costello (the "ALJ").  (Tr. 103-04, 124-28).  The ALJ conducted a hearing on June 10, 2014 in Rochester, New York.  (Tr. 32-56). In a decision dated July 23, 2014, the ALJ found that Reider was not disabled and was not entitled to benefits.  (Tr. 14-30).

On January 27, 2015, the Appeals Council denied Reider's request for review of the ALJ's decision.  (Tr. 1-4).  Reider commenced this action on March 19, 2015 seeking review of the Commissioner's decision.  (Docket # 1).

### II.     Relevant Medical Evidence [2]

Treatment notes indicate that Reider began receiving primary care treatment at Lyons Health Center on May 4, 2010, and that she continued to receive care at that location at the time of her administrative hearing.  (Tr. 306-07, 532).  The treatment notes suggest that Reider suffered from depression and anxiety, for which she was prescribed various medications and was referred to psychiatric care.  (Tr. 287, 293, 302-03, 304, 306-07, 325-26, 327-29, 330, 333-35, 336-38, 339, 505).  The medications appeared initially to improve Reider's symptoms, but did not completely alleviate them.  (*Id.*).  At times, Reider demonstrated inconsistent use of

---

[1]  The administrative transcript shall be referred to as "Tr. __."

[2]  Those portions of the medical records that are relevant to this decision are recounted herein.

prescribed medications, due to her inability to afford them or because they caused side effects. (Tr. 293, 333, 505).  She also declined psychiatric treatment because she could not afford it. (Tr. 505, 514).  On August 16, 2013, John Wehrle ("Wehrle"), MD, prescribed Celexa to address her depression and hydroxyzine to address her insomnia and severe anxiety.  (Tr. 514).  On September 4, 2013, Reider reported that her mood had improved, she was sleeping better, and she had not experienced any side effects.  (*Id.*).  Wehrle assessed that her depression and anxiety had improved.  (Tr. 516).

On November 26, 2013, state examiner Christine Ransom ("Ransom"), PhD, conducted a consultative psychiatric evaluation of Reider.  (Tr. 463-66).  Reider reported that she lived with her husband and he had driven her to the examination.  (*Id.*).  Reider reported that she had attended high school in a regular education setting and had obtained a diploma.  (*Id.*).  She had previously been employed as a Certified Nursing Assistant ("CNA") and had stopped working in May 2013 due to knee pain.  (*Id.*).

According to Reider, she had never been hospitalized or received psychiatric mental health treatment, although she had received mental health treatment from her primary care physician "off and on" during the previous ten years.  (*Id.*).  She was currently on medication for her mental health symptoms.  (*Id.*).

Reider reported that her depression and anxiety had returned due to current stressors that included unemployment, pain, and financial stress.  (*Id.*).  She reported difficulty sleeping and waking frequently.  (*Id.*).  She also reported an increased appetite and that she had gained approximately fifty pounds during the previous six months.  (*Id.*).  She experienced crying spells, frequent irritability, low energy, preoccupation with problems, difficulty concentrating, and lack of interest in being around people other than her family.  (*Id.*).  She also

reported panic attacks characterized by palpitations, sweating, breathing difficulty, trembling, and fear.  (*Id.*).  She reportedly had suffered from panic attacks for the previous fifteen years, which had recently increased in frequency to twice a week.  (*Id.*).

Reider reported that she was able to care for her personal hygiene, but had difficulty completing household chores, including cooking, laundry, and shopping, due to knee and joint pain.  (*Id.*).  She reported that she was able to manage money, but had difficulty driving due to her tendency to become easily frustrated and angry at other drivers.  (*Id.*).  She participated in limited socializing and spent the majority of her day watching television.  (*Id.*).

Upon examination, Ransom noted that Reider appeared casually dressed and well-groomed.  (*Id.*).  Ransom opined that Reider had fluent and intelligible speech with a moderately dysphoric and tense voice, adequate language, coherent and goal-direct thought processes, moderately dysphoric and tense mood and affect, clear sensorium, full orientation, good insight and judgment, and average intellectual functioning.  (*Id.*).  Ransom noted that Reider's attention and concentration appeared to be mildly impaired by mood disturbance and anxiety.  (*Id.*).  According to Ransom, Reider was able to count backwards from ten and could perform two out of three simple calculations, but was unable to complete serial threes.  (*Id.*).  Reider's recent and remote memory skills appeared impaired due to mood disturbance and anxiety.  (*Id.*).  According to Ransom, Reider could recall one out of three objects immediately, one out of three objects after delay, and could complete three digits forward and two digits backward.  (*Id.*).  Reider had difficulty remembering information about her own past personal history.  (*Id.*).

According to Ransom, Reider would have mild to moderate difficulty following and understanding simple directions and instructions, performing simple tasks independently,

4

maintaining attention and concentration for simple tasks, maintaining a simple regular schedule, and learning simple new tasks. (*Id.*). She would have moderate difficulty performing complex tasks, relating adequately with others, and appropriately dealing with stress due to major depressive disorder, currently moderate, panic disorder without agoraphobia, currently moderate. (*Id.*). Ransom opined that the evaluation was consistent with Reider's alleged psychiatric symptoms and suggested that Reider suffered from significant psychiatric problems that would moderately interfere with her ability to function on a daily basis. (*Id.*). Ransom recommended that Reider seek more intensive psychiatric treatment and assessed her prognosis to be "improved with more intensive treatment." (*Id.*).

On December 9, 2013, agency medical consultant Dr. L. Blackwell ("Blackwell") completed a Psychiatric Review Technique. (Tr. 61-62). Blackwell concluded that Reider's mental impairments did not meet or equal a listed impairment. (*Id.*). According to Blackwell, Reider suffered from mild limitations in maintaining social functioning and performing activities of daily living, and moderate limitations in her ability to maintain concentration, persistence or pace. (*Id.*). According to Blackwell, Reider had not suffered from repeated episodes of deterioration. (*Id.*). Blackwell completed a mental Residual Functional Capacity ("RFC") assessment. (Tr. 65-67). Blackwell opined that Reider suffered from moderate limitations in her ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from

supervisors, and respond appropriately to changes in a work setting.  (*Id.*).  In reaching these

conclusions, Blackwell reviewed Reider's medical records from Lyons Health Center and

Ransom's opinion.  (*Id.*).  Blackwell opined that Reider was capable of performing unskilled and

some skilled work.  (*Id.*).


## DISCUSSION

### I.    Standard of Review

This Court's scope of review is limited to whether the Commissioner's

determination is supported by substantial evidence in the record and whether the Commissioner

applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004)

("[i]n reviewing a final decision of the Commissioner, a district court must determine whether

the correct legal standards were applied and whether substantial evidence supports the

decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also*

*Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo*

whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's

conclusions are supported by substantial evidence in the record as a whole or are based on an

erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C.

§ 405(g), a district court reviewing the Commissioner's determination to deny disability benefits

is directed to accept the Commissioner's findings of fact unless they are not supported by

"substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to

any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is

defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1)   whether the claimant is currently engaged in substantial gainful activity;

(2)   if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3)   if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4)     if not, whether despite the claimant's severe impairments,
        the claimant retains the residual functional capacity to
        perform his past work; and

(5)     if not, whether the claimant retains the residual functional
        capacity to perform any other work that exists in significant
        numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the

national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383

(quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

### A.     The ALJ's Decision

          In his decision, the ALJ followed the required five-step analysis for evaluating

disability claims.  (Tr. 17-27).  Under step one of the process, the ALJ found that Reider has not

engaged in substantial gainful activity since May 3, 2013, the alleged onset date.  (Tr. 19).  At

step two, the ALJ concluded that Reider has the severe impairments of right knee arthritis status

post arthroscopic surgeries, depression, and anxiety.  (*Id.*).  At step three, the ALJ determined

that Reider does not have an impairment (or combination of impairments) that meets or

medically equals one of the listed impairments.  (Tr. 19-21).  With respect to Reider's mental

impairments, the ALJ found that Reider suffers from mild restrictions in activities of daily living

and social functioning and moderate difficulties in maintaining concentration, persistence and

pace, and social functioning.  (*Id.*).  The ALJ concluded that Reider has the RFC to perform

simple tasks at less than the full range of sedentary work, including sitting for up to six hours in

an eight-hour workday, standing or walking up to two hours in an eight-hour workday, and

lifting and carrying up to ten pounds, but must be permitted to change positions after every thirty

minutes of standing or walking and cannot kneel, crouch, or climb ladders or scaffolds.
(Tr. 21-26).  At steps four and five, the ALJ determined that Reider was unable to perform her
prior work, but that other jobs existed in the national and regional economy that she could
perform, including the positions of ticket taker and taper.  (Tr. 26-27).  Accordingly, the ALJ
found that Reider is not disabled.  (*Id.*).

> **B.**     <u>**Reider's Contentions**</u>

>          Reider contends that the ALJ's determination that she is not disabled is not
supported by substantial evidence and is the product of legal error.  (Docket # 11-1).  First, she
challenges the ALJ's RFC assessment on the grounds that the ALJ failed to give appropriate
weight to the opinion of her treating orthopedist, Bruce P. Klein ("Klein"), MD, that Reider
could work only four hours a day.  (Docket ## 11-1 at 23-28; 13 at 1-6).  Next, Reider maintains
that the ALJ's RFC assessment is flawed because he failed to consider or weigh Ransom's
opinion.  (Docket ## 11-1 at 29-31; 13 at 6).


> **II.**     <u>**Analysis**</u>

>          An individual's RFC is her "maximum remaining ability to do sustained work
activities in an ordinary work setting on a continuing basis."  *Melville v. Apfel,* 198 F.3d 45, 52
(2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (1996)).  In making an RFC
assessment, the ALJ should consider "a claimant's physical abilities, mental abilities,
symptomology, including pain and other limitations which could interfere with work activities
on a regular and continuing basis."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009)
(citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant
evidence, including medical opinions and facts, physical and mental abilities, non-severe

impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

Reider argues that the ALJ improperly failed to consider Ransom's opinion and thus failed to weigh it or to explain the basis for rejecting the limitations that she assessed. (Docket ## 11-1 at 29-31; 13 at 6).  According to Reider, an ALJ is required to consider all medical opinions of record, including opinions authored by consulting physicians.  (*Id.*).  Reider maintains that the ALJ's failure to consider Ransom's opinion was an error requiring remand. (*Id.*).  I agree.

An ALJ should consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d)).  In evaluating medical opinions, regardless of their source, the ALJ should consider the following factors:

(1) the frequency of examination and length, nature, and extent of the treatment relationship;

(2) the evidence in support of the physician's opinion;

(3) the consistency of the opinion with the record as a whole;

(4) whether the opinion is from a specialist; and

(5) whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010); *see Spielberg v. Barnhart*, 367 F. Supp. 2d at 281 ("factors are also to be considered with regard to non-treating sources, state agency consultants, and medical experts") (citing 20 C.F.R. § 404.1527(f), *redesignated* § 404.1527(e)); *House v. Astrue*, 2013 WL 422058, *3 (N.D.N.Y. 2013) ("[m]edical opinions,

regardless of the source are evaluated considering several factors outlined in 20 C.F.R.

§§ 404.1527(c), 416.927(c)").

In his decision, the ALJ reviewed Reider's medical records, her testimony, and

Blackwell's medical assessment, which he accorded "some weight." (Tr. 24-25). Based upon

this evidence, the ALJ concluded that Reider had the mental capacity to perform simple tasks

without any additional limitations. (Tr. 21, 25). In reaching this conclusion, the ALJ did not

discuss or mention Ransom's opinion. Thus, the decision does not reflect whether he considered

and rejected Ransom's opinion and, if so, the basis for any such rejection, or whether he

overlooked Ransom's opinion entirely.[3]  Reider is entitled to have the ALJ consider Ransom's

opinion and explain any rejection of the limitations assessed in that opinion. *See* SSR 96-6, 1996

WL 374180, *1 (July 2, 1996) ("[ALJ's] . . . may not ignore [opinions from state agency medical

and psychological consultants] and must explain the weight given to these opinions in their

decisions"); *Jackson v. Colvin*, 2016 WL 1578748, *4 (W.D.N.Y. 2016) ("because there was no

treating physician's opinion detailing plaintiff's mental limitations, the ALJ was required to

discuss and weigh the opinions of the consulting state agency psychologists in reaching a mental

RFC finding"); *Hall v. Colvin*, 37 F. Supp. 3d 614, 627 (W.D.N.Y. 2014) ("[t]he ALJ . . . did not

assign weight to *any other physician* who provided an opinion for the medical record[;] [t]his is a

reversible error"); *Hill v. Astrue*, 2013 WL 5472036, *12 (W.D.N.Y. 2013) ("with regard to [the]

consultative psychologist . . . , the ALJ failed to discuss his opinion or explain the weight, if any

accorded to it[;] [t]his is further error requiring remand"); *Stytzer v. Astrue*, 2010 WL 3907771,

---

[3]  The ALJ did provide the basis for his determination that the record supported his conclusion that an RFC limiting Reider to simple work adequately accounted for any limitations caused by her mental impairments. (Tr. 25). According to the ALJ, the medical records demonstrated an improvement with medication. (*Id.*). Most of the records cited by the ALJ, however, predate Ransom's evaluation, which demonstrated abnormal mood and affect and impaired memory and concentration. (Tr. 463-66). In any event, it is impossible to determine whether the ALJ reached this conclusion despite Ransom's opinion or whether he overlooked Ransom's opinion, and thus may have reached a different conclusion had he considered it.

*7 (N.D.N.Y. 2010) ("[u]nless the treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant, or other program physician or psychologist, as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the agency]") (quoting 20 C.F.R. § 416.927(f)(2)(ii), *redesignated* 20 C.F.R. § 416.927(e)(2)(ii)).  Thus, the ALJ's failure to consider Ransom's opinion and explain the weight to be assigned to it was error requiring remand.

The government maintains that the ALJ's failure to explicitly weigh Ransom's opinion was harmless because he relied upon the opinion of Blackwell, who reviewed Ransom's opinion prior to making his assessment.  That Blackwell reviewed Ransom's opinion prior to rendering his own assessment is irrelevant, especially where, as here, his opinion does not explain his conclusion that Reider could perform simple and some skilled work despite the limitations assessed by Ransom.  (Tr. 61-67).

The government urges the Court to infer that the ALJ considered and properly rejected the limitations assessed by Ransom because those limitations were not supported (and indeed contradicted) by other evidence in the record.  (Docket # 12-1 at 26-27).  I disagree that the ALJ's decision permits such an inference.  Rather, the decision is entirely silent on Ransom's opinion, and I am unable to determine whether the ALJ considered it or overlooked it altogether. *Hall v. Colvin*, 37 F. Supp. 3d at 627 (rejecting government's *post hoc* argument that the consulting opinion was incorporated into the ALJ's RFC limitation; "a reviewer of the ALJ's decision cannot determine what, if any, weight was assigned to . . . [consulting physician's] opinion"); *Allen v. Comm'r of Soc. Sec.*, 2012 WL 4033711, *9 (N.D.N.Y. 2012) ("[b]ecause the ALJ failed to explain why portions of [the nurse practitioner's and doctor's] medical source

statements were not adopted, the [c]ourt finds that the ALJ did not apply the correct legal standard in determining [p]laintiff's RFC assessment"); *Overbaugh v. Astrue*, 2010 WL 1171203, \*9 (N.D.N.Y. 2010) ("[b]ecause the ALJ offered no explanation for failing to include the limitations into plaintiff's RFC, the [c]ourt is unable to determine how the ALJ arrived at plaintiff's RFC[;] [t]he ALJ's failure to explain why he disregarded portions of [the doctor's] assessment, while simultaneously assigning it controlling weight, constitutes legal error"); *May v. Barnhart*, 2007 WL 203986, \*5 (D.N.H. 2007) ("[i]n light of the ALJ's failure to address the opinion of [mental health counselor and doctor] that claimant's impairments will cause her to be absent from work more than three days each month, the most prudent course is to remand this matter for further proceedings"); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 298 (W.D.N.Y. 2006) ("[w]ith no explanation provided, it is not possible for the [c]ourt to know why . . . the ALJ chose to disregard the evidence that was more favorable to plaintiff's claim[;] [h]er failure to reconcile the RFC assessment with medical source statements was error, and based upon the testimony given by the vocational expert, the failure was not harmless").

Although the failure to explicitly assign weight to an opinion may be harmless in certain situations, such as where the ALJ's decision reflects that the opinion was considered or where the limitations assessed in the opinion are ultimately accounted for in the RFC, *see Hamilton v. Astrue*, 2013 WL 5474210, \*16 (W.D.N.Y. 2013) ("[a]lthough the ALJ did not explicitly assign a weight to [medical opinion], the ALJ provided a summary of [the opinion] . . . in his decision[;] [i]n any event, the [opinion] is consistent with . . . and supports [the ALJ's] RFC determination; any error is thus harmless"), those circumstances are not present here because the ALJ's opinion does not even mention Ransom's opinion.

Moreover, the limitations Ransom assessed in her opinion are not accounted for in the ALJ's RFC.  The only work-related mental limitation incorporated into the ALJ's RFC is a limitation to simple work.  A simple work limitation does not, in the absence of further explanation, appear to account for many of the limitations identified by Ransom, including assessed difficulties with attention and concentration, scheduling, learning, dealing with stress, and interacting with others.  (Tr. 465).  Indeed, Ransom's opinion that Reider suffered from mild to moderate difficulties understanding simple directions and instructions and performing simple tasks independently seems at odds with the ALJ's conclusion that Reider could perform simple work.  On this record, the ALJ should have explained why these limitations were not incorporated into his RFC.  *See Stytzer v. Astrue*, 2010 WL 3907771 at *8 ("[t]he RFC determination is less limiting than [the consulting physician's] opinion, thus the ALJ was compelled to explain why he rejected [the opinion]").

On remand, the ALJ is directed to evaluate Ransom's opinion and identify and explain the weight, if any, he accords it.  If the ALJ rejects portions of Ransom's opinion, he should "clearly delineate which portions of [Ransom's] opinion[] will be incorporated into his RFC finding, and which will not be included."  *Beckers v. Colvin*, 38 F. Supp. 3d 362, 372 (W.D.N.Y. 2014).  For those portions he rejects, he should explain, in accordance with Social Security Rulings 96-6 and 96-8p, why they will not be incorporated into the RFC assessment. *See id.*

Reider also contends that the ALJ's RFC assessment was flawed because he improperly rejected the four-hour limitation assessed by Klein.  (Docket ## 11-1 at 23-28; 13 at 1-6).  In light of my determination that the ALJ erred in failing to evaluate Ransom's opinion, I decline to reach Reider's remaining contentions.  *See Johnson v. Colvin*, 2016 WL 3922025, *5

(W.D.N.Y. 2016) ("[b]ecause reevaluation of the weight to be assigned to [the physician's] opinion could affect the ALJ's RFC assessment and the rest of the sequential evaluation process, I do not reach [plaintiff's] remaining contentions").  Although I do not reach the issue, I note that a longitudinal review of Klein's treatment notes suggests that the ALJ correctly characterized Klein's treatment note restricting Reider to a four-hour workday as temporary in nature. (Tr. 524).  Reider's treatment history demonstrates Klein performed three separate arthroscopic surgeries on Reider and that each time he temporarily excused her from work while he assessed her recovery.  (Tr. 384-462).  He typically permitted her to return to work, with temporary restrictions that he later removed based upon her improvement.  (Tr. 424, 431, 434-35, 439-42, 443, 444-45, 462, 484-85, 486-87, 488).  Also, in a treatment note that post-dated the treatment note in which Klein assessed the four-hour limitation, Klein stated that "current restrictions remain with no prolonged stairs, no squatting, kneeling or deep knee bends"; he did not articulate an hours restriction.  (Tr. 488).  Indeed, as recognized by the ALJ, Klein endorsed Reider's goal of obtaining employment that did not require kneeling, squatting, deep knee bends, ladders, stairs, prolonged standing or walking, and he believed that she would be best suited to a "sit-down job."  (Tr. 459-60, 484-85).  Placed in this context, it is reasonable to interpret his assessment that Reider could return to work for four-hour shifts as a temporary limitation to be reevaluated as Reider's healing progressed.  (Tr. 488, 524).  In any event, on remand the ALJ may consider whether to recontact Klein to clarify whether his four-hour restriction was temporary in nature.

## <u>CONCLUSION</u>

For the reasons stated above, the Commissioner's motion for judgment on the pleadings (**Docket # 12**) is **DENIED**, and Reider's motion for judgment on the pleadings (**Docket # 11**) is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

_____
*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       September 23, 2016